[L. A. No. 9597. In Bank.—February 14, 1929.]

FRANK BRYSON, as Administrator, etc., Respondent, v. NATIONAL TRAVELERS CASUALTY COMPANY OF DES MOINES, IOWA, Appellant.

George W. Seith and Louis P. Pink for Appellant.

Andreani & Haines and John L. Bisher, Jr., for Respondent.

PRESTON, J.— Action by the administrator of the estate of Bruno Cosco, deceased, to recover upon a policy of accident insurance following the accidental death by drowning of said Bruno Cosco, said action being opposed by defendant upon the ground that said policy had lapsed and all rights thereunder had been forfeited because of nonpayment of the premium due thereon. The court gave judgment for plaintiff, finding that at the time of said death said policy had not lapsed nor had any right thereunder been forfeited for nonpayment of premium, or at all, but that at said time said policy of insurance was in full force and effect. Defendant has appealed. The sole question is with respect to the sufficiency of the evidence to support said findings above set forth. The facts, established largely by documentary evidence and almost undisputed, follow:

The policy was dated July 25, 1923. As consideration it named a premium of $5 to be paid upon issuance and a further annual premium of $12 to be paid in quarterly installments starting October 25, 1923. Said Bruno Cosco duly made the initial payment of $5 and thereafter on October 25, 1923, also paid the first quarterly installment. Thereafter and prior to January 23, 1924, the due date of the second quarterly installment, to wit, on January 3, 1924, he gave to the soliciting agent for said insurance company his check for $24, payable to the company, for the purpose of having said policy raised from $25 to $50 weekly indemnity. Said payment was accompanied by his application for the larger policy, in which, answering the question as to whether he was carrying accident and health insurance in other companies, it was stated "Pacific Mutual $25.00 week and National Travelers Casualty Ass'n $25 per week *which this will replace.*" In return said agent gave him a receipt on the regular printed form issued by the company acknowledging a first payment on his said application; the receipt also recited that salesmen were permitted to collect first year payments only.

The application for an increased policy was rejected by the company; however, said agent deliberately neglected to communicate this fact to the insured, nor did he return his money to him. Explaining this action, he testi-

fied: "There was a sort of partial understanding between Mr. Cosco and myself—he didn't know that this application had been rejected and I didn't dare tell him, at least didn't want to tell him. . . . Because he was rejected on ticklish grounds. The Company said they would not accept him because he was an Italian. . . . Q. The situation was that he gave you $24.00 to apply on the premium of a new policy of insurance which he understood would take the place of the policy then outstanding? A. Yes, sir. . . . Q. You didn't tell him at any time that the policy had been rejected? A. No. Q. You did tell him that as long as the other policy was issued that would take the place of the one he had made? A. Yes."

Thereafter on three separate occasions said insurance company sent to the insured from its head office notices informing him that there was due and payable on January 23, 1924, the sum of $7 to cover the quarterly installment due on the accident policy here involved and also a quarterly installment due on a health policy which he held in said company. The second notice, among other things, stated: "If payment has already been made, no attention to this notice is necessary, but be sure it has—take no chance." On January 24th the company wrote him, asking for an explanation of his delinquency, and also sent him a final delinquent notice which stated that reinstatement of his insurance could be made by sending in the amount due.

On March 4th said insured wrote the company, stating that on January 3d he had paid said $24 to their representative to have his policy raised from $25 to $50, but as he had received many letters regarding delinquency, he wanted to know whether said agent had ever turned the money in to the company. The company's reply, dated March 10th, dispatched from Des Moines, stated that no money had been received from their representative, asked for his name and address and suggested that the insured ascertain from him why the matter had not been taken care of, for as it then stood said insurance was delinquent, saying nothing, however, about declaring a forfeiture under the terms of the policy. Six days later, to wit, on March 16, 1924, said insured was drowned and thereafter the public administrator presented said claim, the subject of this

action, for recovery upon said accident policy, with the aforesaid result.

The record leaves us with no doubt that this insured was led by said agent to believe, and rested in his belief, that his insurance was paid for and would be continued in full force and effect either until further payment became due upon the old policy or the new policy should be issued to take its place. The company not only had full notice that its agent secured said application for additional insurance but in fact examined and passed upon it. No claim is made that the agent was not then representing said company to secure applications for insurance and to collect first payments thereunder. The company contends that his authority to receive premiums extended no further than to permit him to collect the original or initial payment; hence, even if it be conceded that said $24 was intended to apply upon the old policy, said agent was without authority to make the collection. However, the receipt itself issued on the form printed by said company for use of its agents and given to this insured, as above noted, recites: "Salesmen are permitted to collect first year payments only. . . . " Certainly, therefore, the Company is estopped to deny that its agent had authority to collect said sum and to apply it as a first payment upon the new policy, if issued to replace the old, or if not issued, to receive and apply it as a payment upon the policy then in force, as in either instance it would be in full or partial settlement of the premium due for the first year of the life of the policy upon which it was applied.

Under these circumstances, knowing that an amount amply sufficient to meet all obligations had been paid, said insured was not at fault in disregarding the notices from the company until he could find time to inquire about the matter. The situation is not altered by the fact that the first notice stated "Salesmen not authorized to accept this payment," for the payment had already been accepted by the salesman and the above understanding had already been had with him. Furthermore, the second notice reassured said insured by stating that if payment had already been made, no attention to the notice was necessary.

Again, appellant, by its own act, estopped itself to declare the rights of the insured forfeited when, in response

to his letter of March 4th, which was to the effect that he had paid $24, that he was to get a new or increased indemnity policy but had not received it and wanted to know if the agent had remitted said amount to the company, it replied on March 10th, saying nothing about a forfeiture, but, on the contrary, asking said insured to get in touch with the agent and ascertain why he had not taken care of the matter. Before an unreasonable time elapsed for a reply, the insured was drowned. It requires no citation of authority to support the conclusion that appellant, while negotiating with a policy-holder about the premium and with pending matters unfinished, could not declare a forfeiture of the policy without extending a further opportunity for payment of the amount due.

In short, there having been no breach of any obligation on his part to be performed by said insured, said notices were ineffective to suspend or forfeit for nonpayment of premium his said insurance contract, and we hold that the findings of the court below, to the effect that at the time of his death said policy was in full force and effect, have abundant support in the evidence.

As authority for the holding we here make, see *Knarston* v. *Manhattan L. Ins. Co.*, 124 Cal. 74 [56 Pac. 773]; *Bank of Anderson* v. *Home Ins. Co.*, 14 Cal. App. 208 [111 Pac. 507]; *Knarston* v. *Manhattan L. Ins. Co.*, 140 Cal. 57 [73 Pac. 740]; *Faris* v. *American Nat. Assur. Co.*, 44 Cal. App. 48 [185 Pac. 1035]; *Frank & Co.* v. *New Amsterdam C. Co.*, 175 Cal. 293 [165 Pac. 927].

The judgment is affirmed.

Waste, C. J., Curtis, J., Langdon, J., Shenk, J., Seawell, J., and Richards, J., concurred.