[S. F. No. 1114.   Department One.—March 20, 1899.]

ALICE L. KNARSTON, Appellant, v. MANHATTAN LIFE INSURANCE COMPANY, Respondent.

LIFE INSURANCE—PREMIUM—POWER OF GENERAL AGENT—WAIVER—EXTENSION OF TIME.—A general agent of a life insurance company may waive the conditions of a policy, and extend the time of payment of a premium, unless specially restricted by limitations and instructions communicated to parties dealing with him. The waiver of conditions is within the apparent scope of his authority in the absence of notice to the contrary to the insured.

ID.—IMPLICATION AGAINST FORFEITURE, AND IN FAVOR OF WAIVER.—The law looks with disfavor upon forfeitures, and evidence tending to show the waiver of a forfeiture will be favorably regarded, and the forfeiture will be avoided upon any reasonable showing. The amount of evidence required to establish a forfeiture is much greater than that required to establish a waiver; and the waiver may be implied from the acts and conduct of the parties.

ID.—NOTICE OF FORFEITURE—SUBSEQUENT WAIVER.—A notice that the policy will be forfeited if the premium is not paid by a day fixed, given by a New York company, pursuant to the New York law, does not preclude the subsequent waiver of the forfeiture, by a further extension of time to pay the premium made by the general agent and by treating the policy as in force during the

period of such extension, after the time fixed in the notice, and upon the death of the insured within the period of such extension the company can not claim a forfeiture of the policy.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   A. A. Sanderson, Judge.

The facts are stated in the opinion of the court.

John H. Durst, for Appellant.

James M. Allen, and Allen & McAllister, for Respondent.

GAROUTTE, J.—This is an action brought to recover upon a policy of life insurance.   The defense is, that the policy had become forfeited prior to the death of the insured by reason of the nonpayment of the fourth semi-annual premium.   The policy contained the usual forfeiture clause upon failure occurring in the payment of premiums when due.   The defendant company, being a New York corporation, was required by the laws of that state to give a written notice to the insured at a stated time before the premium became due and payable, notifying him of the fact that such premium would become due and payable upon a certain date.   The giving of this notice was made by the law of New York a condition precedent to the forfeiture of the policy.   It is conceded that in this case the notice was given.

The facts giving rise to this litigation are as follows: The fourth semi-annual payment became due upon November 15, 1895.   Upon that day the general manager of the company sent his collector to Knarston, the insured, to collect the premium, but Knarston was absent from his place of business. This fact was reported to the general manager, whereupon the collector was again sent upon November 16th to collect the premium.   One Gilmor, representing Knarston, thereupon went to see Landers, the general manager and agent of the company, in reference to the matter, stating to Landers that Knarston desired an extension until November 24th in which to pay the premium.   Landers then stated, in substance, that such extension would be given.   Upon November 25th the collector was again sent to collect the premium, and Knarston thereupon

promised to pay it that day or make some arrangement in reference to the matter. Upon November 27th the collector was again sent upon the same errand, but failed to get the money. Nothing further was done, and upon December 2d the insured was killed in a railroad accident.

There are but two important questions involved upon this appeal, the first one being: May a general agent of an insurance company waive the conditions of a policy and extend the time of payment of a premium? This question presents but little difficulty in solution, and must be answered in the affirmative. Bacon on Benefit Societies and Life Insurance, section 426, states the true rule when he says: "A general agent has power, unless specially restricted by limitations and instructions communicated to parties dealing with him, to waive or dispense with any of the conditions of the policy. And the company is liable for all acts done by him in the course of his employment. He may waive conditions either in writing or verbally." It will thus be observed that whatever the restrictions placed upon the powers of a general agent by the company may be, unless those restrictions are brought home to the insured, the company is bound by the acts of the general agent. The waiver of conditions in a policy of life insurance by the general agent is within his apparent scope and authority, and, in the absence of notice to the contrary, parties dealing with such agent have the right to assume that all general powers rest with him. In this country, where these companies carry on business in almost every state in the Union through the instruments of general agents, such of necessity should be the law. We find ample authority to support the text of the author from which we have quoted. (*Silverberg v. Phenix Fire Ins. Co.*, 67 Cal. 36; *Union etc. Ins. Co. v. Wilkinson*, 13 Wall. 222; *Hartford Life Ins. Co. v. Haydens*, 90 Ky. 39; *Murphy v. Southern Life Ins. Co.*, 3 Baxt. 440; 27 Am. Rep. 761; *Palmer v. Phoenix Mut. Life Ins. Co.*, 84 N. Y. 63.) It is said in Joyce on Insurance, section 536: "In general, it may be stated that it is conceded that a general agent may, in the absence of known limitations on his authority, waive a forfeiture as well as the company." It is .apparent from the foregoing authorities that it is not sufficient .upon the part of the defendant to show that Landers had no

authority to waive conditions in the policy, but to such a showing must be joined the all-important fact that the insured, Knarston, knew of the limitations placed upon Landers' authority. There is an entire absence of any such showing in this record. Indeed, it appears affirmatively that the insured had no such notice.

It is next contended upon the part of the appellant that defendant waived the payment of the premium at the time it became due under the policy, and hence there was no forfeiture of the policy at the date of Knarston's death. After careful consideration we have concluded this contention has full support in the law. The law does not like forfeitures, and evidence tending to show the waiver of a forfeiture will be looked upon with kindly eyes. While the time for payment of premiums is a pure matter of contract between the parties, and such time may not be extended by the courts, still forfeitures will be avoided upon any reasonable showing. The amount of evidence demanded to establish a forfeiture is much greater than is needed to establish a waiver. Again, there need be no direct and specific agreement to waive the forfeiture. A waiver may be implied from the acts and conduct of the parties. Speaking directly to this question, it is said in *Titus v. Glenn Falls Ins. Co.*, 81 N. Y. 419: "But it may be asserted broadly that if in any negotiations or transactions with the assured after knowledge of the forfeiture it recognized the continued validity of the policy, or does acts based thereon, or required the insured, by virtue thereof, to do some act or incur some trouble or expense, the forfeiture, as matter of law, is waived; and it is now settled in this court, after some differences of opinion, that such a waiver need not be based upon any new agreement or an estoppel." Again, it is said in *Hanley v. Life Assn.*, 4 Mo. App. 253: "Regard must be had to the element of reciprocity. If a company keeps things open so that it can at any time claim its rights to premiums, why should not the policy be regarded as existing in respect to its liabilities? . . . . If the forfeiture, whether full or partial, occurs *eo instanti* the insurer should act accordingly. If his own acts show that he does not regard it as having so occurred, he cannot complain that those acts are made evidence against him. It is no hardship that he should be made to take

one ground or the other." Joyce says: "As a general rule, if the company has treated the policy as valid and has sought to enforce payment of the premium, or has otherwise with knowledge recognized by its own acts or declarations, or those of its agents, the policy as still subsisting, it waives thereby prior forfeitures." (Joyce on Insurance, sec. 1379.) A waiver was held in *Robinson v. Pacific Fire Ins. Co.*, 18 Hun, 395, the court saying: "Down almost to the time of the destruction of the property by fire the defendant was making vigorous attempts to collect the premium on the last renewal, and showed no sign of an intention to take advantage of the conditions in the policy which made it void, but one quite to the contrary of continuing the policy and collecting the consideration for so doing." The identical principle here discussed was under consideration in *Murray v. Home Benefit Assn.*, 90 Cal. 406, 25 Am. St. Rep. 133, and it is there said: "And the rule is firmly established in this class of cases that when an insurance company, after knowledge of any default for which it might terminate the contract, enters into negotiations or transactions with the assured which recognize the continued validity of the policy and treat it as still in force, the right to claim a forfeiture for such previous default is waived." (Citing cases.)

Tested by the foregoing authorities, there can be but one conclusion arrived at in this case, and that is, a waiver of the forfeiture is disclosed by the evidence. The express promise of the general agent to extend the time of payment of the premium to November 24th left the policy in full force and effect to that time. If the insured had died during that extension there could be no question but that the company would have been liable. Indeed, respondent's counsel admitted such liability at the oral argument. The notice served upon the insured under the provisions of the New York law was to the effect that the policy would be forfeited upon November 15th if the premium was not paid. Yet it is conceded that the forfeiture at that time was waived by the ten-day extension. Was the right of forfeiture exercised by the company upon the 24th of November, or thereafter? There surely was no exercise of the right of forfeiture at that time, for upon the 25th the defendant attempted to collect the premium, and likewise attempted to collect it upon the 27th.

By these acts of defendant it is plain that it considered the policy in full force and effect upon both the 25th and the 27th. The insured was killed upon December 2d.   Between the 24th of November and the 2d of December, by no word, deed, act, or sign did the defendant indicate that the policy was forfeited. Upon the contrary, everything that was said or done by defendant during that time indicates that it deemed the policy to be in full force and effect.   The general agent himself testifies that he would have accepted the premium at the hands of the insured if paid at any time before Knarston's death.   This statement is strong evidence against defendant's present position. It casts a strong light upon the mind of the defendant, and shows almost conclusively that it did not exercise the right to claim a forfeiture prior to Knarston's death, but upon the contrary considered the policy as alive and in full force and effect. The cases all hold that under circumstances as presented here the insurance company may not blow both hot and cold at the same time.   In other words, it cannot be allowed to say the policy was canceled prior to Knarston's death, and at the same time declare that it was ready and willing to accept the premium at any moment before his death.   If the policy was canceled, it had no right to reanimate it by the mere acceptance of a premium.   The defendant has no right to say, Knarston having met with sudden death, the policy is canceled because the premium was not paid; and in the same breath also say, if Knarston had not met such death we would not have considered the policy canceled, but would have accepted the premium if offered.

Much stress is laid by respondent upon the written notice served upon the insured prior to November 15th, as required by the laws of the state of New York.   That notice was simply a condition precedent to the forfeiture of the policy.   The serving of the notice in no way or degree barred the company from thereafter waiving the forfeiture, if it felt so disposed. And that the forfeiture was waived for the space of ten days after November 15th cannot be denied.   The promise to give a ten days' extension of time in which to pay the premium accomplished the result.   The fact that this promise was made upon November 16th, the day after the premium became due,

is immaterial. It is said in *Insurance Co. v. Norton*, 96 U. S 241: "On the other hand, if the agreement be made after the note matures, such agreement is itself a recognition on the company's part of the continued existence of the policy, and, consequently, of its election to waive the forfeiture." Conceding, upon the expiration of the ten days' extension, that the forfeiture would take place in the presence of nonaction upon the part of the parties to the contract, still we have no such case. Defendant thereafter treated the contract of insurance as still in force. By its conduct it affirmatively indicated that as yet it did not insist upon a forfeiture. Aside from the original notice, the effect of which has been entirely neutralized by its subsequent conduct, the defendant indicated no intention during Knarston's life of claiming a forfeiture. After Knarston's death, in view of its previous conduct, it was too late to make the claim.

For the foregoing reasons the judgment is reversed, and the cause remanded for a new trial.

Van Dyke, J., and Harrison, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.